**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HOWARD O. POWELL,** | : | **CIVIL ACTION NO. 1:13-CV-1041** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SGT. K. KIRCHNER, LIBRARIAN** | : | |
| **P. HARADEN,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Howard O. Powell ("plaintiff"), an inmate housed at the State Correctional Institution at Dallas ("SCI-Dallas"), Pennsylvania, at all times material, commenced this civil rights action with the filing of a complaint (Doc. 1) on April 22, 2013, naming Sgt. K. Kirchner ("Kirchner") and Librarian P. Haraden ("Haraden") as defendants. Before the court is a motion (Doc. 11) to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of the defendants. For the reasons that follow, the court deems the motion unopposed and, upon review of plaintiff's allegations, will dismiss plaintiff's complaint.

## I.   Procedural Background

On July 22, 2013, defendants filed a motion (Doc. 11) and supporting brief (Doc. 12) seeking dismissal of plaintiff's *pro se* complaint (Doc. 1). Opposition papers were due to the court on or before August 8, 2013, but plaintiff filed to file a brief responding to the defendant's motion.  On September 9, 2013, the court issued an order (Doc. 15) notifying plaintiff that, while he had failed to timely file opposition papers, he would be afforded until September 22, 2013, to opposed the motion. (Id.).

Plaintiff was expressly admonished that failure to comply with the deadline would result in the motion being deemed unopposed. (Id. (citing LOCAL RULE OF COURT 7.6 ("Any party opposing any motion shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion.")). The court-imposed deadline has expired, and plaintiff has failed to oppose defendants' motion. Consequently, the motion is deemed unopposed.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp.

2

v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.  **Allegations of the Complaint**

Plaintiff alleges that he had a "long term, loving relationship" with Kirchner while she was employed as a corrections officer at SCI-Dallas.  (Doc. 1 at 2).  When Kirchner was promoted to sergeant, plaintiff wrote her a letter informing her of ways she could correspond with him because "it's going to be hard . . . to see each other to talk since your [sic] not a (C.O.1) no more. . . ."  (Id.).  In response, Kirchner issued plaintiff misconduct # A892351 charging him with sexual harassment and

obscene or abusive language. (Id.; see also Doc. 14 at 1). Plaintiff alleges that, by

issuing the misconduct, Kirchner "used official retaliation to lie and cover-up [their]

real relationship to deprive [him] of [his] liberty, due process and right to petition

the government." (Doc. 1 at 2). Plaintiff was sanctioned with disciplinary custody

and loss of custody level status. (Id.).

With respect to Haraden, the librarian at SCI-Dallas, plaintiff alleges that

she intentionally deprived him of access to the courts by failing to copy and return

to him his "after-discovered" evidence. (Id. at 3). Plaintiff contends that Haraden's

conduct deprived him of his exculpatory witness and of his rights in the context of

the appeal of his disciplinary hearing. (Id.)

## IV.    Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## A. First Amendment Retaliation

Plaintiff alleges that defendant Kirchner issued him a misconduct in retaliation for writing her a letter that revealed their personal relationship, in violation of his constitutional rights. The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can, in some circumstances, infringe upon a prisoner's First Amendment rights. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim, a plaintiff must demonstrate that: (1) he was engaged in constitutionally protected activity; (2) he suffered an "adverse action" by government officials; and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With respect to the first and second Rauser prongs:

> Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is "protected" or an action is "adverse" will depend on context. . . . Standing in his cell in a prison, an inmate is quite limited in what he can say; his government jailor can impose speech-limiting regulations that are

5

> "reasonably related to legitimate penological interests. . . ." The fact that certain conduct of the plaintiff must be "protected" in order to state a claim does not change with the setting—what changes is the type of conduct deemed protected in that particular setting.

Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999).  The fact of incarceration and the valid penological objectives of deterrence, rehabilitation, and institutional security justify limitations on the exercise of constitutional rights by inmates.  See DeHart v. Horn, 227 F.3d 47, 50-51 (3d Cir. 2000 (citing Pell v. Procunier, 417 U.S. 817, 822-23 (1974)).  Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell, 417 U.S. at 822.

Defendants argue that plaintiff has no constitutionally protected right to correspond with defendant Kirchner or to engage in a romantic relationship with her.  (Doc. 12 at 10).  The court is compelled to agree: there is no constitutional right to engage in such conduct with correctional officers inside the prison walls.

Moreover, even if plaintiff's conduct was constitutionally protected, his claim would still fail because he cannot demonstrate that he has suffered some adverse action at the hands of prison officials.  See Rauser, 241 F.3d at 333 (citing Allah, 229 F.3d at 225).  To show "adverse action," plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 535 (E.D. Pa. June 24, 2002) (quoting Allah, 229 F.3d at 225).  Plaintiff alleges that he was the victim of adverse action in the form of the filing of false misconduct charges against him.

6

However, because retaliation claims arising from alleged false misconducts can be easily fabricated, the court must view them with sufficient skepticism to avoid becoming entangled in disciplinary actions taken against prisoners. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Notably, the filing of a single prison disciplinary report is not actionable as prohibited "retaliation" unless the report is, in fact, false. See Walker v. Campbell, 2011 WL 6153104, at *7 (W.D. Pa. Oct. 31, 2011); see also Harris -Debardelaben v. Johnson, 121 F.3d 708, (6th Cir. 1997) (affirming summary judgment in the absence of any indication that inmate's disciplinary charges were false or that appellant suffered any impediment in his ability to file grievances).

Following an administrative hearing on July 6, 2012, plaintiff was found guilty of sexual harassment and obscene or abusive language and sanctioned to 180 days of disciplinary custody. (Doc. 14 at 5). He appealed the hearing examiner's decision to the Program Review Committee ("PRC"), which sustained the filing of the misconduct on July 18, 2012. (Id. at 9.). He then appealed to the superintendent, who found as follows:

> Under DC-ADM 801, the hearing examiner is tasked with the responsibility of making a determination of guilt or innocence based upon the information available to him at the time of the hearing. The hearing examiner has the reporting staff member's written report, as well as your testimony, in addition to having some correspondence on which to base his decision. In reviewing the results of the hearing, I find that the hearing examiner did in fact go to sufficient lengths in order to determine the facts

7

> regarding this issue, and based upon that information the
> preponderance of evidence suggest [sic] that you are in
> fact guilty of the charge as written by the reporting staff
> member.  Therefore, your appeal to misconduct
> #A892351 is denied.

(Id. at 11).  As noted above, the filing of this single misconduct is not actionable as

prohibited "retaliation" because the disciplinary charges were not, in fact, false.

Walker, 2011 WL 6153104, *7; also Harris-Debardelaben, 121 F.3d 708.

　　　With respect to the third Rauser prong, plaintiff was not engaged in

protected conduct and no adverse action was taken against him; consequently,

there is no need to engage in a causal link analysis, and plaintiff's retaliation claim

against defendant Kirchner is subject to dismissal.

## 　　　B.　　　Fourteenth Amendment Due Process

　　　Plaintiff also alleges that his due process rights were violated in the context

of the disciplinary hearing.  The Fourteenth Amendment to the United States

Constitution provides, in pertinent part: "No State shall . . . deprive any person of

life, liberty, or property, without due process of law. . . ." U.S. CONST. amend XIV.

Due process protections attach in prison disciplinary proceedings in which the loss

of good-time credits is at stake.  See Wolff v. McDonnell, 418 U.S. 539, 564–65 (1974).

Where this protected liberty interest is at stake, due process guarantees mandate

that prisoners receive: "(1) advance written notice of the disciplinary charges; (2) an

opportunity, when consistent with institutional safety and correctional goals, to call

witnesses and present documentary evidence in his defense; and (3) a written

statement by the factfinder of the evidence relied on and the reasons for the

disciplinary action." <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985) (citing <u>Wolff</u>, 418 U.S. at 563-67). Because plaintiff did not suffer a loss of good conduct time, the <u>Wolff</u> protections are inapplicable.

Moreover, the due process clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges, insofar as these other forms of discipline do not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002) (citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 484 (1983)). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of liberty contemplated by <u>Torres</u> and necessary to trigger due process protections. <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995); <u>see Griffin v. Vaughn</u>, 112 F.3d 703, 706-07 (3d Cir. 1997). Because plaintiff's 180 days of disciplinary confinement did not impose an atypical and significant hardship on plaintiff relative to the ordinary limitations of prison life, his due process claim arising out of disciplinary proceedings is subject to dismissal.

Plaintiff also asserts that his due process rights were violated because the disciplinary action taken against him negatively impacted his "custody level status." (Doc. 1 at 2). It is well-settled, however, that a prison inmate has no liberty interest arising from the due process clause in a particular placement or custody status. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 223-25 (1976) (observing that prisoners have no protected liberty interest in correctional institution placements). Hence, this claim

is also subject to dismissal.

**C.    First Amendment Access to Courts**

Plaintiff also avers that his right to access the courts was violated when defendant Haraden failed to copy his after discovered evidence.  (Doc. 1 at 3).  To establish a cognizable access to the courts claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a nonfrivolous, arguable claim.  Lewis v. Casey, 518 U.S. 343, 350 (1996); also Christopher v. Harbury, 536 U.S. 403, 415 (2002); Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) (noting that the complainant "must describe the underlying arguable claim well enough to show that it is 'more than mere hope'").  The claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement.  Lewis, 518 U.S. at 355 (finding "[i]mpairment of any other litigating capacity is simply one of the incidental . . . consequences of conviction and incarceration"). And an "actual injury" does not occur without a showing that a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented.  Id. at 354–56. Furthermore, a prisoner must demonstrate that no other remedy will potentially compensate for the lost claim.  Monroe, 536 F.3d at 205.

Plaintiff simply alleges that the failure to copy his "after-discovered" evidence deprived him of his exculpatory witness and his rights; no actual injury to his ability to present a nonfrivolous, arguable claim is identified.  Because plaintiff has not alleged sufficient facts to present a *prima facie* case of denial of access to the courts, the complaint against defendant Haraden is subject to dismissal.

## V.  Leave to Amend

When a complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  In the matter *sub judice*, the flaws in plaintiff's constitutional claims are both legal *and* factual and thus incurable; for this reason, the court concludes that curative amendment would be a futile endeavor.

## VI.  Conclusion

For the above-stated reasons, defendants' motion (Doc. 11) to dismiss will be deemed unopposed and the motion will be granted.

An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        December 27, 2013